UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

NEW PHASE DEVELOPMENT, LLC.,
and WAYNE JONES,                          Case No. 4:13-CV-00520-EJL

                    Plaintiffs,           **MEMORANDUM DECISION AND
                                          ORDER**

          v.

JEFF COOK and NICOR, INC.,

                    Defendant.

---

        Pending before the Court is Defendants' Motion for Summary Judgment (Dkt. 27).

The parties have submitted briefing on the motion and the matter is now ripe for the

Court's review.   Having fully reviewed the record herein, the Court finds the facts and

legal arguments are adequately presented in the briefs and record.   Accordingly, in the

interest of avoiding further delay, and because the Court conclusively finds that the

decisional process would not be significantly aided by oral argument, the motion shall be

decided on the record before this Court without oral argument.

        For the reasons stated below, Defendants' Motion for Summary Judgment is

granted in part and denied in part.

**MEMORANDUM DECISION AND ORDER - 1**

# FACTUAL BACKROUND1

Plaintiff New Phase Development LLC ("New Phase") is an Idaho plastics/tooling company, and Plaintiff Wayne Jones ("Jones") is its founder and sole member (collectively referred to hereinafter as "Plaintiffs").   Defendant Nicor Inc. ("Nicor") is a distributor of, among other things, plastic lids for water meters, and defendant Jeff Cook ("Cook") is the Vice President of Nicor (collectively referred to hereinafter as "Defendants").

Due to a general conversion of conventional water metering equipment in the utility and water works industries, Nicor developed polymer lids that would enable water meters to transmit data and information wirelessly, rather than being read manually.2   However, due to inefficiencies in the process Nicor used to mass-produce its lids, Cook contacted New Phase in early 2013 to seek help with the problems inherent in manufacturing and deploying mass-produced polymer meter lids. Cook contacted New Phase due to Jones' significant experience in the plastics and molding industry.

In order to facilitate discussions about possible business opportunities, including a potential joint venture, the parties negotiated and entered into a "Mutual Non-Disclosure Agreement" on February 28, 2013 ("February NDA").   The February NDA provides:

1. Each party hereto desires to furnish to the other party certain information that the
   party furnishing such information regards as proprietary.   Such information

---

1 Unless otherwise referenced, the following facts are taken from the Complaint. (Dkt. 1.)

2 Nicor does not manufacture meter lids, but rather obtains plastic meter lids from others who manufacture them.   (Dkt. 11, p. 2.)

**MEMORANDUM DECISION AND ORDER - 2**

may include, but is not limited to, information of the disclosing party relating to products and product demonstrations, product configurations, technology, design, specifications, manufacturing processes, business strategies and plans, customer lists, business partners and research and development programs.

2. ("Confidential Information") Confidential information may be furnished in any tangible or intangible form including, but not limited to, writings, drawings, presentations, computer tapes and other electronic media, samples, demonstrations, video and verbal communications.

3. All Confidential Information furnished pursuant to this NDA is done so solely for the purposes of evaluation of each party's potential interest in mutual business development.   No other right, license or authorization, express or implied, to use is granted and each party agrees to be so limited with respect to all Confidential Information hereby received.   All right, title, and interest in the Confidential Information shall remain that of the disclosing party.

4. Each party agrees not to disclose Confidential Information received from the disclosing party to any third party nor use such Confidential Information for any purpose other than to evaluate its interest in the mutual business described above.   The receiving party shall use the same degree of care in maintaining the confidentiality of the Confidential Information as it uses with respect to its own information that is regarded confidential and/or proprietary by such party, but in any case shall at least use reasonable care.   Each party agrees that it will restrict the access of all Confidential Information to only those of its employees and consultants who have need to be informed of the Confidential Information for the purposes for which the Confidential Information is provided, which persons will be bound to the receiving party by an agreement or confidentiality that contains substantially the same obligations contained in this NDA.

(Dkt. 12-1.)

The parties subsequently entered into a second mutual Non-Disclosure Agreement on August 6, 2013 ("August NDA").   The August NDA was entered into by Jones, New Phase, Cook, Nicor, and an additional entity, Bingham & Taylor.[3]   The August NDA contained substantially the same terms as the February NDA, but also provided:

---

3 Bingham & Taylor was brought in by Defendants as a potential source of funding to finance a collaborate venture between Plaintiffs and Defendants.

**MEMORANDUM DECISION AND ORDER - 3**

> Upon violation or threatened violation of the terms of this Agreement, the aggrieved party shall be entitled to seek injunctive and/or other equitable relief on the grounds that such conduct, if not restrained and/or other equitable relief not granted, would result in irreparable and serious harm to that party for which damages would be an inadequate remedy.

(Dkt. 11-1, ¶ 13.)

Pursuant to the NDAs, Plaintiffs disclosed the specifics of their proprietary processes, methodologies and plastics mold designs to Defendants.   Plaintiffs allege their processes, methodologies and plastics mold designs were projected to increase the number of meter lids produced per hour by three to seven times Defendants' prior production rate.   However, the business negotiations between the parties ultimately fell through.   After negotiations ceased, Cook allegedly told Jones that he intended to use Plaintiffs' processes, methodologies, and plastics mold designs for Defendants' own purpose and without Plaintiffs' involvement or consent.   After unsuccessfully attempting to obtain Defendants' assurance that Plaintiffs' confidential information would not be utilized, Plaintiffs ultimately filed the instant suit.[4]

## SUMMARY JUDGMENT STANDARD

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist.   *Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18

---

[4] Defendants thereafter filed counterclaims against Plaintiffs for eight causes of action arising out of Jones' alleged conduct once the business relationship between the parties broke down.   The parties do not address Defendants' counterclaims in the instant briefing and the Court has not considered them.   Defendants' counterclaims remain pending for trial.

**MEMORANDUM DECISION AND ORDER - 4**

F.3d 1468, 1471 (9th Cir. 1994).   The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law.   Fed.R.Civ.P. 56(c).   The moving party bears the burden of informing the court of the basis for its motion and demonstrating the absence of any genuine issue of material fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

On summary judgment, all disputed facts and reasonable inferences must be construed in favor of the nonmoving party.   *Anderson v. Liberty Lobby*, *Inc*., 477 U.S. 242, 255 (1986).   However, to raise a fact issue for trial, the nonmoving party must present more than a mere scintilla of evidence, and must come forward with evidence sufficient to show that a reasonable jury could return a verdict in its favor.   *Id*. at 248.   Further, Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   *Celotex,* 477 U.S. at 322.   If the nonmoving party cannot make a showing on elements essential to his claims, there can be no genuine issue of material fact "since a complete failure of proof concerning an essential element on the nonmoving party's case necessarily renders all other facts immaterial."   *Id*. at 323.

**MEMORANDUM DECISION AND ORDER - 5**

## ANALYSIS

### 1. Breach of Contract

Plaintiffs allege Defendants breached the February and August NDAs by "using the processes, methodologies, and plastics mold designs provided by the [P]laintiffs to the [D]efendants in a manner inconsistent with the contracts."   (Dkt. 1, ¶ 27.)   To state a claim for breach of contract, a plaintiff must plead the following elements: (1) the existence of a contract; (2) breach by the defendant; (3) the breach caused damages; and (4) the amount of damages.   *Edged In Stone, Inc. v. Northwest Power Sys.*, LLC, 321 P.3d 726, 731 (Idaho 2014) (quoting *Mosell Equities, LLC v. Berryhill & Co., Inc*., 297 P.3d 232, 241 (Idaho 2013)).   Defendants argue summary judgment is appropriate because Plaintiffs have not offered any evidence to establish either breach or damages.

With respect to breach, Defendants suggest Jones admitted in his deposition that he did not have any evidence of Defendants' use of Plaintiffs' confidential information, "other than the actions that they've taken in defending this lawsuit."   (Dkt. 27-1, p. 4.)   When asked, "[w]hat do you mean by that?," Jones responded, "I mean it seems like a terrible waste to spend a lot of money defending something you haven't done."   (*Id.*)   As Defendants note, simply defending a lawsuit does not constitute evidence of wrongdoing.

Plaintiffs respond that Cook blatantly told Jones that Nicor was using, or would use, Plaintiffs' confidential information for Nicor's exclusive business purposes.   Specifically, once it became clear the parties would not enter into a business relationship, Cook advised

**MEMORANDUM DECISION AND ORDER - 6**

Jones, in a November 13, 2013 e-mail:

> My suggestion of buying tools was so I could show good faith in buying something from you so that when your injection equipment is in place those tools would be for your production. *I will be tooling those 4 lids in any case because I do believe we will see substantial growth in those lids*, I just can't guarantee anything in this business.

(Dkt. 28-2, Ex. E.) (emphasis added)

Plaintiffs suggest the "4 lids" Cook referenced were the multicavity pit lids Plaintiffs had applied their trade secrets to in order to develop such lids for Defendants to market in upcoming bids to different cities.   (Dkt. 28, p. 5.)   Plaintiffs argue Defendants could not tool the four referenced lids without relying on the confidential information received from Plaintiffs.   To support this contention, Plaintiffs cite Cook's deposition testimony purportedly admitting that Nicor had been unable to develop multicavity tooling for meter pit lids prior to its relationship with New Phase.   (*Id*.; Dkt. 28-2, Ex. B, Cook Dep., p. 4.)   Plaintiffs also reference an October 11, 2013 e-mail from Cook asking New Phase to develop four specific lids for Nicor to market in upcoming bids to the cities of Baltimore, Jackson, Mississippi and New Bern.   (Dkt. 28-1, ¶ 8; Dkt. 28-2, Ex. C.) Plaintiffs allege they then concentrated their efforts on applying their trade secrets to the production of the four multicavity lids identified by Nicor.   Plaintiffs argue Cook's November 13, 2013 e-mail constitutes evidence that Defendants decided to use Plaintiffs' confidential information by developing and selling the referenced multicavity lids.

**MEMORANDUM DECISION AND ORDER - 7**

Further, Plaintiffs claim that even if Defendants did not use Plaintiffs' confidential information, Cook's November 13, 2013 threat to move forward on his own to develop the tooling of the four identified lids constitutes an independent and express breach of the NDAs.   (Dkt. 28, p. 5.)   Defendants respond that the identification of any lids, and their exploitation prospects, was information provided by Defendants, not Plaintiffs.   (Dkt. 31, p. 4.)   Defendants also maintain that although Cook's November 13, 2013 e-mail referenced four meter lids, that such meter lids had anything to do with either multicavity lids or Plaintiffs' trade secrets is pure unsupported speculation and conjecture.   (*Id.*)

Because factual disputes are to be resolved at trial, in ruling on summary judgment motions, the Court does not resolve conflicting evidence with respect to disputed material facts, nor does it make credibility determinations.   *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).   Weighing evidence and drawing legitimate inferences from facts are jury functions, and are not those of the judge when ruling on a motion for summary judgment.   *Anderson*, 477 U.S. at 255.   The Court cannot resolve the parties' conflicting interpretations of Cook's e-mails, nor of his deposition testimony, on summary judgment. The jury will need to hear Cook's testimony and assess his credibility at trial.   Although somewhat insubstantial, Plaintiffs have submitted evidence sufficient to establish a genuine issue of fact with respect to whether Defendants breached the NDAs by either using or threatening to use Plaintiffs' confidential information.

**MEMORANDUM DECISION AND ORDER - 8**

Defendants also maintain Plaintiffs have failed to provide evidence of damages caused by the alleged breach. (Dkt. 27-1, p. 4.)   In response, Plaintiffs do not offer any evidence to support their damages claim, but instead contend that the irreparable harm provision of the NDAs alone supports the damages element of Plaintiffs' breach of contract claim.   (Dkt. 28, p. 6.)   Plaintiffs also maintain the "fact that Nicor was ultimately unsuccessful in winning the bids for the City of Baltimore and Jackson, Mississippi does not excuse Nicor's use of New Phase's Confidential Information in the bidding efforts. Nor does it eliminate or mitigate New Phase's damages."   (*Id*.)   Plaintiffs suggest Defendants' "use of the information, regardless of the outcome has caused irreparable damage to New Phase."   (*Id*.)   Finally, Plaintiffs argue this Court has held defendants may be deemed to have knowledge of the actual damages underlying a plaintiff's breach of contract claim when a non-disclosure agreement contains an irreparable harm provision. (*Id*., citing *Flsmidth Spokane, Inc. v. Emerson*, 2014 WL 2711790, at *5 (D. Idaho 2014)).

The measure of damages for the breach of anti-competition clause, such as those protecting the confidential information of the parties in the Non-disclosure Agreements at issue, is the amount that the plaintiff lost by reason of the breach, rather than the amount of profits made by the defendant.   *Trilogy Networks Sys., Inc. v. Johnson*, 172 P.3d 1119, 1121 (Idaho 2007).   Although the measure of damages for loss of profits is "rarely susceptible of accurate proof," and does not require "accurate proof with any degree of mathematical certainty," such damages do need to be proved with a "reasonable certainty."

**MEMORANDUM DECISION AND ORDER - 9**

*Id.* (quoting *Ryska v. Anderson*, 214 P.2d 874, 876 (Idaho 1950); *Vancil v. Anderson*, 227 P.2d 74, 80 (Idaho 1951). Proving damages with "reasonable certainty" means that the "existence of damages must be taken out of the realm of speculation." *Anderson & Nafziger v. G.T. Newcomb, Inc.*, 595 P.2d 709, 716-17 (Idaho 1979)).

Here, Plaintiffs not only fail to take damages out of the realm of speculation, but fail to offer even speculation as to the appropriate measure of damages.   Plaintiffs do not submit any evidence of profits lost as a result of Defendants' alleged breach, nor do they provide any evidence of Defendants' alleged profits.5  Plaintiffs do not submit any evidence of damages whatsoever.   In fact, the only even passing reference to a potential measure of damages the Court could locate in the record was submitted by Defendants in support of their Motion for Summary Judgment.   Specifically, during his deposition, Jones was asked what damages he was claiming from Defendants.   Jones replied, "What I can prove.   What we'll find out and prove in a court of law."   (Dkt. 27-3, Ex. D, Jones Dep., p. 40, ll. 17-19.)   The deposition continued:

> Q.     Have you suffered any damage right now?
>
> A.     Considerably, yes.
>
> Q.     Okay.   What is that damage?
>
> A.     Do you want a dollar figure?

---

5 A defendant's lost profits may be considered "in determining the reasonableness of the plaintiff's proof as to its lost profits," but is not "a substitute for such proof." *Trilogy Networks*, 172 P.3d at 1122.

**MEMORANDUM DECISION AND ORDER - 10**

Q.     If you have it.

A.     Multiple millions of dollars.

Q.     Okay.   How do you calculate that?

A.     I didn't calculate it.   I gave you a swag.   If you want to give me some time, I can calculate it.

Q.     How are you calculating it?

A.     Well, if you just quickly glance at the number of lids that are represented in the last document that you showed me, and then if you take the number of dollars that I represented that I would sell to Jeff per lid, if you just quantify those, the total dollars of sales are in the millions of dollars.

(*Id.*, p. 40, ll. 20-15; p. 41, ll. 1-10.)

Jones' testimony admits that his own view of damages was exaggerated conjecture. Further, in estimating damages in sales in the "millions of dollars," Jones failed to provide any evidence of costs incurred through such sales.   The Court lacks any means to quantify profits in the absence of such information.   Moreover, Defendants did not agree to purchase any lids from Plaintiffs.   The only agreements between the parties were the Non-Disclosure Agreements signed in anticipation of a potential business relationship. That Defendants decided not to pursue such relationship does not entitle Plaintiffs to damages for lost sales.   In sum, Plaintiffs have failed to take the measure of damages outside of the realm of speculation.

**MEMORANDUM DECISION AND ORDER - 11**

It is a fundamental premise of contract law that, although a plaintiff may have been legally wronged, the plaintiff cannot recover damages unless he was economically injured. *Bergkamp v. Martin*, 759 P.2d 94, 944 (Idaho Ct.App. 1988) (citation omitted).   Plaintiffs' damages claim is without evidentiary support and does not survive summary judgment. Nevertheless, if a plaintiff "wishes to protect some noneconomic interest in a contract, then he may pursue another remedy such as injunctive relief or specific performance."   *Id.* There is a distinction between injury and damage and courts may interpose equitable principles, in a proper case, to protect a right even without actual damage.   *Cazier v. Economy Cash Stores*, *Inc.*, 228 P.2d 436, 441 (Idaho 1951); 43A C.J.S. INJUNCTIONS § 60 (2015).   Plaintiffs request injunctive relief in their Complaint, and seek an order permanently enjoining Defendants "from using or disclosing the plaintiffs' Confidential Information as defined by the NDAs."   (Dkt. 1, ¶ 49.)   As noted, Plaintiffs have submitted evidence to establish a genuine issue of material fact with respect to whether Defendants used or threatened to use Plaintiffs' confidential information.   Under these circumstances, the Court finds that Plaintiffs' breach of contract claim survives summary judgment to the extent Plaintiffs seek injunctive relief.   However, if Plaintiffs prevail in establishing breach of contract at trial, their remedy will be limited to potentially obtaining injunctive relief.

   2.   *Violation of Idaho Trade Secrets Act*

Defendants seek summary judgment dismissing Plaintiffs' claim for trade secret

misuse or misappropriation.   The Idaho Trade Secrets Act ("ITSA"), I.C. § 48-801, *et. seq.*, provides for damages or injunctive relief if "a defendant acquired a trade secret by 'improper means' or [] a defendant disclosed or used the trade secret without consent and with knowledge that the trade secret was acquired by improper means or under circumstances giving rise to a duty to maintain secrecy."   *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1129 (9th Cir. 2010).   Improper means include, "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means."   I.C. § 48-801(1).

Plaintiffs allege that Defendants "willfully misappropriated the plaintiff's trade secrets through improper means, including breach of the defendants' duty to maintain the trade secrets arising under the NDAs."   (Dkt. 1, ¶ 36.)   Defendants claim summary judgment on Plaintiffs trade secret claim is appropriate because there are no genuine disputes of material fact regarding misuse, misappropriation or damages.6   (Dkt. 27-1, p. 5.)

---

6 Defendants do not concede that the information disclosed by Plaintiffs pursuant to the NDAs constituted trade secrets, but do not take up this argument on summary judgment.   (*Id.*, n. 2.)   The term "trade secret" "means information, including a formula, pattern, compilation, program, computer program, device, method, technique, or process" that "[d]erives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."   I.C. § 48-801(5).   To prevail in a misappropriation action under ITSA, the plaintiff must show that a trade secret actually existed.   *Wesco Autobody Supply, Inc. v. Ernest*, 243 P.3d 1069 (Idaho 2010).   For purposes of the present motion, the Court assumes, without deciding, that Plaintiffs' information can be considered trade secrets.

**MEMORANDUM DECISION AND ORDER - 13**

Defendants acquired Plaintiffs' trade secrets after signing the NDAs.   Obtaining confidential information pursuant to a non-disclosure agreement represents "circumstances giving rise to a duty to maintain its secrecy or limit its use."   I.C. § 48-801(2)(b)(B)(ii). Thus, if Defendants used or disclosed Plaintiffs' trade secrets, they are liable for misappropriation.   *Id*.

Plaintiffs do not suggest that Defendants disclosed their trade secrets to anyone other than Bingham & Taylor.   (Dkt. 28-2, Ex. A, ¶ 5.)   Bingham & Taylor was a party to the August NDA, and any disclosure by Defendants of Plaintiffs' trade secrets to Bingham & Taylor was contractually authorized.   (Dkt. 27-3, Ex. 3.)   Therefore, the Court must examine Defendants "use" of Plaintiffs' trade secrets as an independent basis of liability. With respect to "use," the Restatement of Unfair Competition provides:

> There are no technical limitations on the nature of the conduct that constitutes 'use' of a trade secret for purposes of the rules stated in Subsection (b).   As a general matter, any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a "use" under this Section.   Thus, marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through the use of information that is a trade secret, all constitute 'use.'

Restatement (Third) of Unfair Competition § 40, cmt. c (1995) (citation omitted).

The term "use" in the "context of misappropriation of a trade secret generally contemplates some type of use that reduces the value of the trade secret to the trade secret owner."   *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1131 (9th Cir. 2010) (citing 1 Trade

**MEMORANDUM DECISION AND ORDER - 14**

Secrets Law § 3:20).   In addition to Cook's November 13, 2013 alleged threat to use Plaintiffs' trade secrets, Plaintiffs claim Defendants misused the trade secrets in concert with Bingham & Taylor for purposes of servicing Bingham & Taylor's contracts or bids to provide manhole covers to third parties including the city of Baltimore.7   (Dkt. 28-2, Ex. A, ¶ 5.)     In support of this contention, Plaintiffs submit evidence that Nicor had never developed tooling for any multicavity meter pit lids prior to disclosure of Plaintiffs' trade secrets, that Cook testified in his deposition that Nicor had been unable to develop any methods for tooling multicavity meter pit lids prior to the parties' relationship due to the complicated nature of such tooling, that Plaintiffs provided Defendants with confidential information on how various technologies can be combined to decrease production time and increase profitability for the manufacturing of specific lids, and that, shortly after Cook's threat to use Plaintiffs' trade secrets to develop four multicavity meter pit lids, Nicor submitted a bid to the city of Baltimore in concert with Bingham & Taylor which relied upon Plaintiffs' process for molding multicavity meter pit lids.   (Dkt. 28-1, ¶¶ 8, 11, 16-20) (citing Dkt. 28-2, Ex. B, Cook Dep., p. 44, ll. 12-18, p. 48, ll. 15-28, Dkt. 28-1, Ex. D; Dkt. 28-1, Ex. E; Dkt. 28-1, Ex. F.))   The Court finds Plaintiffs have submitted sufficient evidence to establish a genuine issue of material fact with respect to "use."

---

7 Plaintiffs also claim Defendants' breaches are ongoing "in so far as Defendants continue to use the trade secrets in concert with Bingham & Taylor to manufacture and sell manhole covers."   (Dkt. 28-2, Ex. A, ¶ 8.)

**MEMORANDUM DECISION AND ORDER - 15**

The nature of unauthorized use, however, is relevant to determining appropriate relief.   *JustMed*, 600 F.3d at 1131 (quotation omitted).   In Idaho, courts typically construe actual loss "to mean lost profits, lost customers, lost market share, and similar losses."   *Id.* (quoting *GME, Inc. v. Carter*, 917 P.2d 754, 756 (Idaho 1996)).   Here, as mentioned, Plaintiffs have failed to offer any evidence to establish actual loss as a result of Defendants' alleged use.[8]   Plaintiffs have not provided any evidence to suggest that either Defendants' possession or use of Plaintiffs' trade secrets resulted in a loss of secrecy or a loss of value.   Thus, not only are damages not appropriate under Idaho law, but neither is a finding that Defendants misappropriated Plaintiffs' trade secrets. *JustMed*, 600 F.3d at 1131.   Defendants are accordingly entitled to summary judgment with respect to Plaintiffs' trade secrets claim.

Nonetheless, under Idaho law, "[a]ctual or threatened misappropriation may be enjoined."   I.C. § 48-802(1).   Therefore, while damages for misappropriation of a trade secret are inappropriate here because of the lack of "use" or "disclosure" as contemplated in the context of trade secret protection, the Court may grant an injunction against Defendants' threatened use or disclosure of the source code if appropriate.   *JustMed*, 600 F.3d at 1131.   Given the disputed issues of material fact regarding this issue already detailed, whether Plaintiffs are entitled to an injunction will need to be decided at trial.

*3. Unjust Enrichment*

---

8 Defendants ceased pursuit of tooling multicavity pit meter lids in response to Plaintiffs' lawsuit.   (Dkt. 28-1, ¶ 20.)

**MEMORANDUM DECISION AND ORDER - 16**

A right to recovery for unjust enrichment occurs where "the defendant has received a benefit which would be inequitable to retain at least without compensating the plaintiff to the extent that retention is unjust." *Beco Const. Co., Inc. v. Bannock Paving Co., Inc.*, 797 P.2d 863, 866 (Idaho 1990) (quoting *Hertz v. Fiscus*, 567 P.2d 1, 2 (Idaho 1977)).   This doctrine may not be appropriately applied in this case because a recovery for unjust enrichment is not permissible where there is an enforceable contract between the parties covering the same subject matter.   *Wilhelm v. Johnston*, 30 P.3d 300, 307 (Idaho App. 2001) (citing *DBSI/TRI v. Bender*, 948 P.2d 151, 160 (Idaho App. 1997)); *see also The Vanderford Co., Inc. v. Knudson*, 165 P.3d 261, 272 (Idaho 2007).   Here, the existence of enforceable non-disclosure agreements, which define the parties' rights and responsibilities, precludes application of the unjust enrichment doctrine.

Plaintiffs' unjust enrichment cause of action is also preempted by the ITSA. Plaintiffs' trade secrets and unjust enrichment claims are both based on Nicor's alleged use of Plaintiffs' confidential information after the relationship between the parties soured. Section 48-806(1) of the ITSA states:   (1) Except as provided in subsection (2) of this section, this chapter displaces conflicting tort, restitutionary, and other law of this state providing civil liability remedies for misappropriation of a trade secret."   I.C. § 48-806(1). Section 48-806(2)(a) and (b) provide the ITSA does not affect other contractual remedies, whether or not based upon misappropriation of a trade secret, or other civil remedies that are not based upon misappropriation of a trade secret.   I.C. § 48-806(2)(a) & (b).

**MEMORANDUM DECISION AND ORDER - 17**

In 2007, this Court held, as a matter of first impression, that the aforementioned displacement provision preempts actions such as those for unjust enrichment. *Chatterbox, LLC v. Pulsar Ecoproducts, LLC*, 2007 WL 1388183, at *3 (D. Idaho 2007) (noting the majority view is that the Uniform Trade Secrets Act (and corresponding state trade secrets acts) preempt claims that are based on the unauthorized use of information, regardless of whether that information meets the statutory definition of a trade secret); *see also Digital Envoy, Inc. v. Google, Inc.*, 370 F.Supp.2d 1025, 1035 (N.D.Cal. 2005) (finding California's trade secret act preempted plaintiff's claims for unfair competition and unjust enrichment since those claims were based on the same nucleus of facts as plaintiff's misappropriation of trade secrets claim); *Hutchison v. KFC Corp*., 809 F.Supp. 68, 71-72 (D. Nev. 1992) (finding the Uniform Trade Secrets Act displaced civil remedies for unjust enrichment, unfair competition and breach of confidential relationship based on alleged misappropriation of trade secret); *Allegiance Healthcare Corp. v. Coleman*, 232 F.Supp.2d 1329, 1335-36 (S.D.Fla. 2002) (dismissing plaintiff's unfair competition claim as preempted by the Uniform Trade Secrets Act where there was no material distinction between the wrongdoing alleged in the trade secret claim and that alleged in the unfair competition claim).

Plaintiffs' unjust enrichment claim fails as a matter of law due to the existence of an enforceable express contract between the parties covering the same subject matter, and because it is preempted by the ITSA.   The Court accordingly grants Defendants summary

**MEMORANDUM DECISION AND ORDER - 18**

judgment with respect to unjust enrichment.

### 4. Injunction

Defendants' summary judgment motion devotes three sentences to their attempt to dismiss Plaintiffs' claim for injunctive relief, the core of which is "there is not any evidence supporting all elements of substantive grounds of Plaintiffs' allegations."   (Dkt. 27-1, p. 7.)   However, Plaintiffs have presented evidence to establish a genuine issue of material fact with respect to whether Defendants threatened to use and/or used Plaintiffs' confidential information.   Although Plaintiffs have failed to prove any damages as a result of such use they may, as outlined above, be entitled to injunctive relief.   Summary judgment with respect to Plaintiffs' fourth claim for relief is accordingly denied.

### 5. Plaintiffs' Motion to Seal (Dkt. 29)

Plaintiffs filed a motion seeking to seal exhibits submitted in support of their response to Defendants' Motion for Summary Judgment.   Plaintiffs' Motion to Seal did not provide any justification for sealing the documents, other than that they "contain confidential information."   Magistrate Judge Ronald E. Bush accordingly determined Plaintiffs failed to meet their burden of demonstrating compelling reasons to restrict public access.   (Dkt. 32) (citing *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178-1180 (9th Cir. 2006)).   Judge Bush ordered Plaintiffs to submit a supplemental brief demonstrating "compelling reasons" to keep the documents under seal by June 23, 2015 if they desired to maintain the records under seal. (Dkt. 32.)   Plaintiffs did not file a

**MEMORANDUM DECISION AND ORDER - 19**

supplemental brief.   The Court accordingly assumes Plaintiffs either do not desire to keep the records under seal or do not have compelling reasons to restrict the "strong presumption" in favor of public access. *Id.*   Plaintiffs' Motion to Seal is accordingly denied.

## ORDER

**IT IS HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment (Dkt. 27) with respect to Plaintiffs' breach of contract claim is **GRANTED IN PART** and **DENIED IN PART**. Summary Judgment is **GRANTED** with respect to damages; Plaintiffs will not be permitted to present evidence of damages for breach of contract during trial. Summary Judgment is **DENIED** with respect to breach.   An injunction may be available if Plaintiffs can establish breach at trial.

2. Defendants' Motion for Summary Judgment (Dkt. 27) with respect to Plaintiffs' trade secrets misappropriation claim is **GRANTED**.   However, Plaintiffs may be entitled to an injunction under Idaho Code § 48-802 if they can establish Defendants used or disclosed their trade secrets at trial.

3. Defendants' Motion for Summary Judgment (Dkt. 27) is **GRANTED** with respect to Plaintiffs' unjust enrichment claim;

4. Defendants' Motion for Summary Judgment (Dkt. 27) is **DENIED** with respect to Plaintiffs' claim for injunctive relief;

**MEMORANDUM DECISION AND ORDER - 20**

5.  Plaintiffs' Motion to Seal (Dkt. 29) is **DENIED**.

DATED: July 27, 2015

Edward J. Lodge
United States District Judge